# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICHARD A. POWELL,**
        Petitioner,

v.                                          Case No. 14-C-1360

**JUDY P. SMITH, Warden,**
Oshkosh Correctional Institution,
        Respondent.

## DECISION AND ORDER

In 2009, Richard Powell pleaded no contest in state court to five counts of homicide by intoxicated use of a vehicle. Wis. Stat. § 940.09(1)(a). The judge found Powell guilty and sentenced him to five years in state prison and three years of extended supervision on each count, to be served consecutively. Months later, Powell moved for a sentence modification arguing that the judge sentenced him based in part on inaccurate information. The judge agreed but concluded that he would have imposed the same sentence regardless of the inaccurate information before him at sentencing. He denied Powell's motion. The Wisconsin Court of Appeals affirmed that decision holding that, although the sentencing judge relied on inaccurate information, "there was no reasonable probability that [his] error . . . contributed to Powell's sentence," so "[t]he error was harmless." *State v. Powell*, No. 2012AP327, slip op. at 4 (Wis. Ct. App. Apr. 3, 2013). The Wisconsin Supreme Court denied Powell's petition for review.

Powell asserts a violation of his constitutional due-process right to be sentenced based on accurate information only and petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254 seeking resentencing by a new judge. Because Powell is a

state prisoner seeking relief on a "claim that was adjudicated on the merits in State court," I can only grant him habeas relief if he shows that the decision of the Wisconsin Court of Appeals (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d).

## I. Contrary to Clearly Established Federal Law

Powell argues that the state court's decision was contrary to the Supreme Court's decision in *United States v. Tucker*, 404 U.S. 443 (1972), which similarly concerned the use of inaccurate information at sentencing. A state court decision is only "contrary to" clearly established federal law for purposes of relief under § 2254(d) "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Accordingly, I must consider the Court's legal conclusions in *Tucker*, as well as the facts and result of that case.

Forrest Tucker was charged with armed bank robbery and, in 1953, was tried in federal court before a jury, which found him guilty. Tucker testified at trial and, on cross-examination, acknowledged three prior felony convictions. At sentencing, the district judge referred to Tucker's prior convictions and sentenced him to 25 years in prison, the maximum term for the crime then authorized by federal law.

Years later, two of Tucker's prior convictions were deemed constitutionally invalid under *Gideon v. Wainwright*, 372 U.S. 335 (1963), because they resulted from

2

proceedings during which Tucker had been denied the assistance of counsel. After these convictions were set aside, Tucker moved under 28 U.S.C. § 2255 for relief from his armed-robbery conviction arguing that "evidence of his prior invalid convictions had fatally tainted the jury's verdict." *Tucker*, 404 U.S. at 445. The district judge denied Tucker's motion, finding that, given the "overwhelming trial evidence" of his guilt, any error in admitting evidence of his prior convictions "was harmless beyond a reasonable doubt." *Id.* Tucker appealed to the Ninth Circuit.

On appeal, the Ninth Circuit agreed that "the evidence of prior convictions did not contribute to the verdict obtained" and that "the error in receiving such evidence was therefore harmless beyond a reasonable doubt" with respect to Tucker's conviction. *Id.* Nevertheless, the Ninth Circuit determined that there was "a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed" and, thus, it was "unable to conclude that the reception of such evidence was harmless" with respect to Tucker's sentence. *Tucker v. United States*, 431 F.2d 1292, 1294 (9th Cir. 1970). The Ninth Circuit reversed and remanded for resentencing without regard to Tucker's invalid prior convictions. The government appealed to the Supreme Court.

Before the Court, the government argued that "it [was] highly unlikely that a different sentence would have been imposed even if the judge had known that two of [Tucker's] previous convictions were constitutionally invalid." *Tucker*, 404 U.S. at 446. The Court rejected that argument and agreed with the Ninth Circuit that Tucker's sentence "might have been different if the sentencing judge had known that at least two

3

of [his] previous convictions had been unconstitutionally obtained." *Id.* at 448 ("Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang."). As the Court could not "assume . . . that the trial judge [would] upon reconsideration 'undoubtedly' impose the same sentence," it affirmed the Ninth Circuit's decision requiring resentencing. *See id.* at 449 n.8.

Powell argues that *Tucker* "compels the grant of a new sentencing hearing once it is shown that the sentencing court relied on inaccurate information in determining the sentence" and that "it does not allow for the reviewing court . . . to deny relief to a defendant so aggrieved by claiming that the sentence would have been the same anyway." Pet.'s Mem., ECF No. 10, at 13–14. That is, according to Powell, under *Tucker*, claims like his are not subject to harmless-error review, so the state court's decision to deny him relief on that basis was contrary to clearly established federal law as determined by the Court. I disagree. *Tucker* does not bar harmless-error review on claims like Powell's. To the contrary, the Ninth Circuit in *Tucker* explicitly applied harmless-error review to such a claim, and the Supreme Court expressly agreed with its reasoning. Both the Ninth Circuit and the Supreme Court simply concluded that the error in Tucker's case was not undoubtedly harmless.

Powell relies heavily on *United States ex rel. Welch v. Lane*, 738 F.2d 863 (7th Cir. 1984), in which the Seventh Circuit held that, under *Tucker*, "a sentence must be set aside where the defendant can show that" (1) "information before the sentencing

4

court was inaccurate" and (2) "the sentencing court relied on the misinformation in passing sentence." *Id.* at 865. Yet, *Welch* "cannot form the basis for habeas relief" under § 2254(d) because "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam). Moreover, that other federal circuit courts have construed and applied *Tucker* differently—e.g., by only applying it where a prisoner is sentenced based on prior convictions obtained in violation of *Gideon*, *Keeny v. Swenson*, 458 F.2d 680, 683 (8th Cir. 1972) (per curiam)—shows that *Tucker* itself did not clearly establish the rule set forth in *Welch*. *See* Brian R. Means, *Federal Habeas Manual* §§ 3:38, :62, Westlaw (updated June 2018).

Even if *Welch* could provide a basis for relief here, Powell fails to show that the state court decision at issue was contrary to it. *Welch* most clearly applies where a "reviewing court" is asked to "independently review the accurate information" that was before the sentencing court to determine whether it "*might* have justified the sentence, independent of the inaccurate information." *Welch*, 738 F.2d at 867. Such an inquiry is improper because it calls for "sheer speculation in reconstructing the sentencing court's thought processes." *Id.* But a reviewing court need not engage in any such speculation where, as here, "the judge who originally sentenced a defendant" considered the defendant's request for relief first. *See id.* at 868 n.6.

In fact, the Seventh Circuit has held that *Tucker* is ordinarily satisfied where the sentencing judge makes "an express determination that the original sentence remain[s] appropriate" based on the accurate information he relied upon at sentencing, despite his error in also relying upon inaccurate information. *Lawary v. United States*, 599 F.2d 218,

5

226 (7th Cir. 1979). For example, in *Crovedi v. United States*, 517 F.2d 541 (7th Cir. 1975), the defendant moved for relief under § 2255 arguing that his sentence was based on prior convictions obtained in violation of *Gideon*. *See id.* at 543, 546–47. The sentencing judge denied the motion because, "regardless of the invalidity" of those convictions, "the sentence imposed . . . was entirely appropriate." *Id.* at 547. The Seventh Circuit "interpreted this as a reaffirmation of the sentence without regard to the prior convictions, and held that sufficient, since 'a remand for reconsideration could accomplish no more than that which [had] already occurred.'" *Lawary*, 599 F.2d at 225–26 (quoting *Crovedi*, 517 F.2d at 547).

In Powell's case, the same judge who sentenced him reconsidered his sentence in light of the accurate and inaccurate information that the judge relied upon at sentencing and reaffirmed it, and the Wisconsin Court of Appeals held that sufficient. Those decisions were not contrary to *Tucker* itself, nor were they contrary to circuit precedent applying *Tucker*. Therefore, Powell is not entitled to relief under § 2254(d)(1), and I will deny his habeas petition to the extent it seeks such relief.

## II. Unreasonable Determination of the Facts

Powell also argues that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. § 2254(d)(2). To prevail under § 2254(d)(2), Powell cannot merely show that "the state court's determination was incorrect." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). He must instead establish that "the state court determined an underlying factual issue against the clear and convincing weight of the evidence." *Weaver v. Nicholson*, 892 F.3d 878, 882 (7th Cir. 2018) (quoting *Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir. 2011)). "A state

court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Morgan*, 662 F.3d at 798 (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

Powell's § 2254(d)(2) claim concerns "statements made by his ex-wife in a letter" that the trial judge relied upon at sentencing. *Powell*, No. 2012AP327, slip op. at 2. In that letter, "[s]he described an episode where he made her kneel on the floor of the garage and said he was going to shoot her, and that he did discharge the gun, and she thought she was going to die." ECF No. 9-10, at 67:9–:12. However, as Powell's ex-wife later admitted under oath, "the information about the incident in the garage was inaccurate." *Powell*, No. 2012AP327, slip op. at 2. "He did not shoot the gun." ECF No. 9-12, at 22:9. As to "what happened on that occasion," she testified,

> I came home from a night of drinking. My husband and I at the time had a verbal dispute. He -- him and I both were exchanging vulgar words. Urn, he told me that he wanted me to die. Told me that he wanted to kill me. He went behind the closet door in our bedroom, got a gun, said he was going to shoot me. I told him not in front of the children, not in the house. I ran out to the garage. He followed me. When I was in the garage, I said -- told him just to do it. I told him shoot me, just get me out of my misery. I went down on my knees. He threw the gun down next to me, said I wasn't worth it, and he left. He left the garage.

*Id.* at 19:4–:15. Then, she "picked the gun up" and "discharged it." *Id.* at 20:3.

Having heard Powell's ex-wife testify, the sentencing judge was convinced that Powell "didn't shoot the gun" but that, "other than that fact, . . . the core story [was] still true." *Id.* at 58:16, :24–:25. Moreover, the judge said, "the fact that [Powell] isn't the one that actually pulled the trigger . . . doesn't seem to change the entire picture that there was a great deal of ugliness in the home regarding this now ex-wife and him." *Id.* at

7

59:13–:17. In fact, the judge was "still convinced" that, other than "the embellishment about who shot the gun," statements by Powell's ex-wife in her letter "about . . . ugly domestic, abusive threats, verbal, if not physical, . . . were true, and that despite . . . 50 people sending letters saying that he projected a pretty good image to the outside world, . . . behind closed doors . . . in a marriage that was under stress, there was difficulty and ugliness and threats." *Id.* at 60:2–:10. The judge concluded that, despite "the lie," given "the entire picture," he "would have drawn and reached the same conclusions and imposed the same sentence." *Id.* at 60:20–:24.

On appeal in state court, Powell challenged the trial judge's "determination that, apart from her admitted lie, [his ex-wife] was otherwise truthful in her submissions to the court." *See* Pet.'s Mem., *supra*, at 17. The Wisconsin Court of Appeals affirmed the sentencing court's conclusion, noting that "[t]he credibility of a witness is for the trial court to determine" and holding that, as "[t]he trial court's determination [was] not clearly erroneous," the court of appeals would "not upset" it. *Powell*, No. 2012AP327, slip op. at 3 (quoting *State v. Lukensmeyer*, 409 N.W.2d 395, 401 (Wis. Ct. App. 1987)).

Powell now argues that the state appellate court's conclusion that the sentencing judge's credibility determination "was not clearly erroneous. . . . ignores the clear and convincing weight of the evidence." Pet.'s Mem., *supra*, at 17. Powell insists that the "weight of the evidence demonstrat[es] that [his ex-wife] was not to be believed," as she had "a motive to lie" and "personal animosity towards [him]" and "admittedly lied" to the sentencing court. *Id.* at 18–20. Moreover, Powell says, his ex-wife's statements that he was abusive were only corroborated by her son (his step-son) and her "live-in boyfriend," who sent a letter to the court at sentencing describing himself as a

8

"concerned citizen" to "conceal[] his [true] identity." *Id.* at 17–19. In Powell's view, given "these grotesque problems with [his ex-wife's] honesty" and "the total absence of any [untainted] evidence corroborating" her statements, the sentencing judge's determination that she was generally credible and the appellate court's decision deferring to that determination were both unreasonable. *Id.* at 20.

Powell has shown that the sentencing court had good reason to question his ex-wife's credibility, but he has not shown that its determination as to her credibility was so inadequately supported by the record as to be objectively unreasonable.

> The [sentencing] court heard the ex-wife's testimony that she had lied about the garage incident and questioned her about the other statements she made [in her letter], including her observation of Powell's demeanor after the fatal accident and at the hospital, that Powell claimed to be the best drunk driver, and that Powell had driven drunk other times.

*Powell*, No. 2012AP327, slip op. at 3. The judge even recognized that some of her statements were only corroborated by her son, who "may have [had] an ax to grind against his stepfather," and her boyfriend, who may have "want[ed] [him] gone." ECF No. 9-12, at 59:1–:5. Even so, the judge found her statements, apart from her admitted lie, credible. That Powell disagrees does not make his finding unreasonable.

Further, Powell has not shown that the state court of appeals unreasonably deferred to the sentencing judge's credibility determination. In general, reviewing courts "give singular deference to a trial court's judgments about the credibility of witnesses. . . . because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

9

Here, the sentencing judge was in the best position to assess the credibility of Powell's ex-wife, as only he "heard her testimony" and "could eyeball her" as she testified. *See* ECF No. 9-12, at 58:15, :20. "[A] finding purportedly based on a credibility determination" may nevertheless be clearly erroneous if, say, "[d]ocuments or objective evidence . . . contradict the witness' story[] or the story itself . . . [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id*. But where, as here, a trial judge decides "to credit the testimony" of a witness who "has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error," much less objectively unreasonable. *See id.*

"Credibility determinations made in the trial court are notoriously difficult to overturn under § 2254(d)(2)." *Coleman v. Hardy*, 690 F.3d 811, 817 (7th Cir. 2012). Powell has not shown sufficient cause to overturn the credibility determination of the state trial court at the heart of his case or that the state appellate court unreasonably deferred to that determination. Therefore, he is not entitled to relief under § 2254(d)(2), and I will deny his petition to the extent it seeks such relief.

### III. Conclusion

For the reasons discussed above, **IT IS ORDERED** that this petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED**, pursuant to Rule 11 of the Rules Governing § 2254 Cases, that a certificate of appealability is **DENIED**.

Dated at Milwaukee, Wisconsin, this 20th day of July, 2018.

                                                  s/Lynn Adelman
                                                  LYNN ADELMAN
                                                  District Judge